UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**BARBARA REDISH,**

       **Plaintiff,**

**v.**                                        **Case No: 5:14-cv-260-Oc-22-PRL**

**CHRIS BLAIR, in his official
Capacity as Sheriff of Marion
County,**

       **Defendant.**

---

## REPORT AND RECOMMENDATION[1]

    Upon referral, this employment disability discrimination matter is before the Court on the parties' cross motions for summary judgment, including Defendant Marion County Sheriff Chris Blair's Motion for Summary Judgment (Doc. 27), and Plaintiff's Motion for Partial Summary Judgment (Doc. 28).  For the reasons discussed below, I submit that the Defendant is entitled to summary judgment on all claims because Plaintiff cannot establish a prima facie case for disability discrimination or retaliation under her state or federal claims.  Accordingly, I recommend that Defendant's motion for summary judgment be granted, and Plaintiff's motion be denied.

## I.    BACKGROUND

    On May 5, 2014, Plaintiff initiated this employment discrimination action against her former employer, Chris Blair, in his official capacity as Sheriff of Marion County.  The following facts are

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions.  See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1.

not in dispute.

Plaintiff began working for the Marion County Sheriff's Office in June, 1994.  In 1997, she was promoted to the position of Master Corrections Officer.  (Doc. 27-2, Ex. B).  As stated in the Sheriff's job description, a Master Corrections Officer is "a responsible position involving the custody, control and care of inmates within an adult detention facility, and the movement of inmates within and outside the facility."  (Doc. 27-3, Ex. C).  The essential duties of the position include being responsible for the "reception, custody, control and release of inmates."  (Doc. 27-3, Ex. C).

During her career as a Corrections Officer (CO), Plaintiff had a history of work and non-work related injuries, and was placed on light duty on various occasions.  (Doc. 27-6, Ex. F).  In early 2009, Plaintiff provided the Sheriff's Human Resources Department with a physician's note requesting that she be placed on light duty.  (Doc. 27-6, Ex. F).  The Sheriff's Office accommodated her request, and placed her on a light duty assignment in the Master Control post in the capacity of a Corrections Assistant.  (Doc. 27-6, Ex. F).  Human Resources Benefits Specialist Barbara Crumley stated in her affidavit, "Ms. Redish is classified as a Master Corrections officer however has been working in the light duty capacity of a Corrections Assistant."  (Doc. 27-6, Ex. F).  Crumley stated that Plaintiff had been on light duty since January 2008 and was still on light duty as of the date of the affidavit, August 5, 2009.  (Doc. 27-6, Ex. F).

As explained by Clint Bowen, Assistant Bureau Chief for Corrections Division, the Master Control position is a Corrections Assistant position.  (Doc. 27-10, Ex. J, p. 10).  Corrections Officers are distinct from Corrections Assistants, in that Corrections Officers are responsible for custody and control of inmates.  (Doc. 27-3, Ex. C).  Further, Corrections Officers must be certified by the State of Florida and require particular training.  (Doc. 27-10, Ex. J, p. 43-44).  In contrast, Corrections Assistants are classified as administrative support personnel.  (Doc. 27-14, Ex. N, p.

39-40).  Corrections Assistants are not certified corrections personnel and are not permitted to have oversight over inmates.  (Doc. 27-10, Ex. J, p. 44).  Corrections Assistants are also at a lower pay grade than Corrections Officers.  (Doc. 27-12, Ex. L, p. 10-11).

It is undisputed that Plaintiff remained on light duty in the capacity of a Corrections Assistant (CA) from January 2008 for well over a year.  (Doc. 27-6, Ex. F).  During that period, Plaintiff remained classified as a Master Corrections Officer and continued to receive the requisite higher pay rate for that position.  In March of 2009, Human Resources Benefits Specialist Barbara Crumley forwarded a standard letter to Plaintiff's treating physicians asking whether Plaintiff could perform the essential functions of her job as Master Corrections Officer and be placed back on full duty.  (Doc. 27-6, Ex. F).  On June 4, 2009, Plaintiff filed a Charge of Discrimination with the Florida Department on Human Relations alleging that Captain Burnett had asked her whether her medication was a narcotic in front of co-workers and sent her home early.  She also alleged that she lost 10 hours of annual leave when she was sent home early, and that the Sheriff invaded her privacy by contacting her physician without her permission.  (Doc. 27-1, p. 54).

As of September 2009, Plaintiff remained on restricted duty and could not return to her Corrections Officer duties.  (Doc. 27-12, Ex. L, p. 9).  Meanwhile, as explained by Sheriff's Office Bureau Chief Jerry Holland, "the corrections people were short handed and we were trying to fill a CO position."  (Doc. 27-12, Ex. L, p. 10).  To address the situation, Holland and other supervisory and Human Resources personnel convened a meeting with Plaintiff on September 30, 2009. Holland explained:

> [Plaintiff] had been working in a CA position for quite some time, and HR had been monitoring that.  And so we were going to offer – we were told that she could not ever come back as a CO and work in a CO capacity, so we were going to offer her a CA position or talk to her about going to worker's comp, which would be better for her.  And that's what the meeting was about.

(Doc. 27-12, Ex. L, p. 9-10).   During the meeting, Holland discussed with Plaintiff the difference between the Corrections Officer salary that she was currently receiving and the lower salary of Corrections Assistant, a position she could continue to perform on light duty.   Holland explained that they considered the possibility of Plaintiff going on worker's compensation and receiving 67 percent of her current Corrections Officer salary and compared that to what she would have made in a "topped out" Corrections Assistant position.   (Doc. 27-12, Ex. L, p. 10-13).   Holland stated that "it was pretty close, but I believe that the worker's comp was a little bit higher."   (Doc. 27-12, Ex. L, p. 11).

Although Plaintiff disputes whether she was formally offered the position of Corrections Assistant, she acknowledges that the possibility of the position was discussed.   (Doc. 27-1, Ex. A, p. 99).   It is undisputed that the meeting ended with Plaintiff's termination, and she was later approved for worker's compensation benefits.   (Doc. 27-12, Ex. L, p. 12).   The testimony of Sheriff's Office witnesses is consistent that, because she had been on light duty for more than one year, Plaintiff was terminated pursuant to Marion County Sheriff's Office Operations Directive 3035.65(B)(1)(b) and (c), which provides that after one year of job related disability leave, "the employee will be terminated and the Agency will turn the case over to Risk Management."   (Doc. 27-14, p. 57, Doc. 27, Ex. A, p. 99, Ex. N, p. 15, Ex. O, p. 9, 16).   It is undisputed that, at the time of her termination, Plaintiff remained physically unable to perform the duties of a Corrections Officer.

Plaintiff initiated this action and asserts four counts in her Amended Complaint (Doc. 6) related to the Sheriff's purported disability discrimination and retaliation.   In Counts I and III she claims that she was discriminated against (i.e., terminated) based on her disability.   Count I is brought under the Florida Civil Rights Act, Fla. Stat. § 760.10, and Count III is brought under

Section 703 of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*  Then in Counts II and IV she claims that she was retaliated against for filing an EEOC complaint.  Count II is brought under the Florida Civil Rights Act, Fla. Stat. § 760.10(7), and Count IV under Section 704(a) of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*  Defendant Chris Blair, in his official capacity as Sheriff of Marion County, argues that he is entitled to summary judgment on all claims because Plaintiff cannot show that she suffered handicap or disability discrimination under Count I, or retaliation under Counts II and IV, and because, as to Count III, Plaintiff's disability is not a protected class under Section 703 of the Civil Rights Act.  Further, Plaintiff's partial motion for summary judgment is due to be denied on her purported ADA claim, as she did not allege an ADA claim in her Amended Complaint and, in any event, fails to set forth a claim now.

## II.    LEGAL STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant carries her burden by showing that there is an absence of evidence supporting the non-movant's case.  *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial.  *Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006).  Affidavits submitted in relation to a summary judgment motion must be "based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence."  *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1314–15 (11th Cir. 2011).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Which facts are material depends on the underlying substantive law.  *Id.*  The Court must view the

evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents,* 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir. 1996).

## III.   DISCUSSION

### A.  Count I – Disability Discrimination under FCRA

In Count I, Plaintiff alleges claims under the Florida Civil Rights Act (FCRA), which prohibits an employer from discharging or otherwise discriminating against an employee with respect to terms of employment because of the employee's handicap or disability. In analyzing a disability discrimination claim under the FCRA, courts use the same framework as disability claims brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA). *See Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007) ("[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims."); *Byrd v. BT Foods, Inc*., 948 So.2d 921 (Fla. 4th DCA 2007) ("As applied to discrimination based on a handicap, the FCRA is construed in conformity with the federal Americans with Disabilities Act."). Likewise, federal case law interpreting the ADA is applicable to claims of disability discrimination under the FCRA. *Fromm-Vain v. Lawnwood Medical Center, Inc.*, 995 F. Supp. 1471, 1475, n. 4 (S.D. Fla. 1997).

"A plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations." *Rylee v. Chapman*, 316 Fed. Appx. 901, 906 (11th Cir. 2009). To establish a prima facie claim of disability discrimination under the ADA, and consequently under the FCRA, a plaintiff must show that: (1) she has a disability; (2) she is a

qualified individual; and, (3) the employer unlawfully discriminated against her because of her disability. *Holly*, 492 F.3d at 1255–1256.

Here, Defendant argues that Plaintiff was not a qualified individual because she could not perform the essential functions of her job as a Corrections Officer. The Court agrees.

A qualified individual must be able to perform the essential functions of the job with or without reasonable accommodation. *Dickey v. Dollar General* Corp. 351 Fed. Appx. 389, 391 (11th Cir. 2009). With respect to essential functions of a position, "consideration shall be given to the employer's judgment," and if an employer has prepared a written description, the "description shall be considered evidence of the essential functions of the job." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001) (emphasis added) (*citing Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)). Further, an accommodation is reasonable only if it enables a plaintiff to perform the essential functions of his job. *Lucas*, 257 F.3d at 1255. "Essential functions" are fundamental job duties, as opposed to "marginal functions." 29 C.F.R. § 1630.2(n)(1); *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998). Therefore, under the ADA, protection is afforded only to employees who are capable of or who are performing the essential functions of the job as defined by the employer.

In this case, it is undisputed that Plaintiff was unable to perform the essential functions of her job as a Corrections Officer as defined by her employer. At the time of Plaintiff's termination, and for more than a year prior, she was unable to perform physically demanding requirements of her job, such as responsibility for the custody and control of inmates. In her deposition, Plaintiff admits she was unable to restrain inmates, and that she was physically unable to perform all the duties of her job as a Corrections Officer at the time of her termination. (Doc. 27-1, Ex. A, p. 56-57).

Rather than directly address Defendant's argument, however, Plaintiff responds that she was a qualified individual because she was qualified to work as a corrections officer in Master Control. Having reviewed the entire record, however, the Court finds this argument unavailing. The evidence is undisputed that Plaintiff was employed and classified as a Corrections Officer, and that the duties of that position included custody and control of inmates. It is also undisputed that, in an attempt to accommodate her, the Sheriff's Office temporarily reassigned her to a light duty position in Master Control, which is a Corrections Assistant position. That Plaintiff was granted a temporary accommodation is evidence of her employer's goodwill, not evidence that she was somehow qualified for a Corrections Officer position despite her restrictions. It is the employer's definition of the job duties, not Plaintiff's characterization of it, that is relevant.

Because there is no genuine dispute that Plaintiff was unable to perform the essential job duties of a Corrections Officer, she is unable to establish that she was a qualified individual under the law. Further, it appears that there was no reasonable accommodation that would have allowed her to continue to work as Corrections Officer. The Sheriff's Office was not required to permit her to continue working in Master Control in the capacity of a Corrections Assistant indefinitely. Indefinite light duty is not a reasonable accommodation. *Rio v. Runyon*, 972 F.Supp. 1446, 1458 (S.D. Fla. 1997). Further, reasonable accommodation does not require that an employer create a new light duty position or new permanent position. *See Howell v. Michelin Tire Corp.*, 860 F. Supp. 1488, 1491 (M.D. Ala. 1994).

Essentially, Plaintiff contends that she should have been permitted to remain classified as a Corrections Officer (and continue receiving the higher pay for that position) while performing the duties of a Corrections Assistant. Such an accommodation would amount to a request that the employer create a new position, and is not a reasonable accommodation under the law. *See Howell*,

860 F. Supp. at 1491.  Further, Plaintiff cannot maintain such a claim unless she can show that she actually requested such an accommodation.  *See Branscomb v. Secretary of Navy*, 461 Fed Appx. 901, 905 (11th Cir. 2012).

An employer has no obligation to employ an individual who is incapable of performing the essential functions of the position.  *See Sutton v. Lader,* 185 F.3d 1203, 1211 (11th Cir. 1999). Because Plaintiff cannot establish that she was a "qualified individual" under the law, she is unable to establish a prima facie case for disability based employment discrimination.  Defendant is entitled to judgment as a matter of law on Count I alleging disability discrimination under the FCRA.[2]

To the extent that Plaintiff brings claims for disparate treatment, an additional basis for summary judgment exists.  Disability discrimination claims based on disparate treatment are analyzed under the McDonnell Douglas burden-shifting framework.  *Holly*, 492 F.3d at 1255.  Even if Plaintiff could establish a prima facie case, which she cannot do, in order to state a claim for disparate treatment, she would have to overcome the Sheriff's proffered legitimate, non-discriminatory reason for her termination.  *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).  Here, the Sheriff has proffered, via the undisputed testimony of numerous witnesses, that Plaintiff was terminated in accordance with Sheriff's Office Directive 3035.65, which  provides that employees who are unable to return to work in a full capacity after one year will be involuntarily terminated.

Thus, the burden shifts to Plaintiff to show that the Sheriff's proffered reason is false and a pretext for discrimination.  Plaintiff fails to do so.  In order to rebut her employer's articulated

---

[2]  Defendant also argues that he is entitled to summary judgment on Count I because Plaintiff was not disabled under the ADA, and Plaintiff contends a factual dispute exists regarding this issue.  However, because the record clearly establishes that Plaintiff was not a "qualified individual," and Plaintiff's prima facie claim fails on that basis, the Court need not reach the issue of whether Plaintiff was disabled under the meaning of the ADA.

reason, she must show that the reason was false and that discrimination was the real reason.  *See*

*Dawson v. Henry Cnty. Police Dept*, 238 Fed. Appx. 545, 549 (11th Cir. 2007).  While Plaintiff

suggests that Directive 3035.65 should not have applied under her circumstances, the undisputed

testimony of Sheriff's Office witnesses is that it was correctly applied, and that it has been applied

to employees on restricted duty.  (Doc. 27-14, Ex. N, p. 90-92).  Further, it is undisputed that the

Sheriff applied the policy consistently with numerous employees under similar circumstances to

Plaintiff.  (Doc. 27-14, Ex. N, p. 17-18).

Defendant argues that the "Sheriff's consistent application of its own policy soundly dispels

any inference of pretext."  (Doc. 27, p. 18).  The Court agrees.  Plaintiff has offered nothing to

suggest that the Sheriff's proffered explanation was pretexual, and the Court's inquiry is limited to

whether the employer gave an honest explanation of its behavior.  *Elrod v. Sears, Roebuck and Co.*,

939 F.2d 1466, 1470 (11th Cir. 1991).  Moreover, that the Sheriff's Office offered or discussed the

possibility of giving Plaintiff a permanent position as a Corrections Assistant is further evidence

belying Plaintiff's claim of discrimination.

For these reasons, Defendant is entitled to judgment as a matter of law on Count I alleging

disability discrimination under the FCRA.

### B.  Counts II and IV–Retaliation under FCRA and Title VII

In Counts II and IV, Plaintiff seeks relief for alleged retaliation in violation of state and

federal law: the Florida Civil Rights Act and Section 704(a) of Title VII, respectively.  Courts assess

FCRA retaliation claims under the same framework as retaliation claims arising under Title VII.

*See Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1389 (11th Cir.1998) ("[D]ecisions

construing Title VII guide the analysis of claims under the Florida Civil Rights Act.").  To establish

a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: (1) that she engaged

in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that the adverse employment action was causally related to the protected activity.  *See Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).  To establish a causal connection, Plaintiff must show that the decision makers were aware of the protected conduct and that the protected conduct and adverse act were at least somewhat related and in close temporal proximity.  *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (discussing a claim of retaliation brought under the ADA, involving the same elements as retaliation claims under the FCRA and Title VII).

Defendant argues that Plaintiff cannot establish a causal connection, and that there is no evidence that her termination was related to her protected activity, which occurred four months prior.  Defendant argues that a four month period between protected activity and termination is, by itself, insufficient to establish retaliation, citing *Higdon*, 393 F.3d at 1221 (finding a three month period between protected activity and adverse action did not, by itself, allow a reasonable inference of a causal relation).  Defendant also relies upon the undisputed evidence already discussed regarding Plaintiff's termination in accordance with a uniformly applied Sheriff's Office policy, Directive 3035.65.

In response, as evidence of retaliation, Plaintiff cites the combination of circumstances, including Plaintiff's charge of discrimination, coupled with the "Defendant's longstanding policy of getting rid of injured workers who cannot fully resume their jobs after 12 months." (Doc. 34, p. 12).  Plaintiff also cites an email exchange between Clinton Bowen and Human Resources Specialist Barbara Crumley.  Crumley reports that she received a doctor's note for Plaintiff stating "Sit down job only starting 3/2/09," and Crumley states, "I do not know when she goes back to the doctor to be cleared or how long this goes till.  If this goes a week or two, I will be good for this

BUT she is a CO and has not worked as a CO since 9/30/08." (Doc. 27-15, pp. 22-23). Bowen

replied, "Can you discuss her issue in the Monday meeting with details to when we can cut her

loose or move her to a CA position?" (Doc. 27-15, p. 23). Plaintiff contends that the reference to

"cut her loose" creates a factual issue regarding retaliation.

Having reviewed the entire record, however, the Court disagrees. The email exchange cited

by Plaintiff is in the context of Crumley's efforts to ascertain the details of Plaintiff's restrictions,

and an estimated timeline of when and whether she may be able to return to work as a Corrections

Officer. Even if all reasonable inferences are drawn in favor of Plaintiff and it is assumed Bowen

had a desire to "cut her loose," i.e., terminate her employment, nothing about the context of the

email suggests a retaliatory motive as opposed to operational concerns. To the contrary, Bowen's

interest is in ascertaining details about her capacity to work in either a CO or CA position, and the

email exchange contains no reference, explicitly or implicitly, to Plaintiff's charge of

discrimination. The Court finds the email exchange between Bowen and Crumley (Doc. 27-15, pp.

22-23) entirely consistent with the Sheriff's management of operational and staffing needs, and

with the application of Directive 3035.65. Although Bowen's use of the phrase "cut her loose" is

colloquial, there is nothing to suggest discriminatory or retaliatory motive. Rather, the email

exchange is consistent with the undisputed evidence regarding the Sheriff's consistent application

of Directive 3035.65. Bowen's own testimony confirms this intent. When asked what he meant by

"cut her loose," he stated, "To where we can do something to fill her position. When she's not

performing her duties, we don't have anyone to perform them. So my question to HR, is when can

we do something to fill this position?" (Doc. 27-10, Ex. J, p. 14-15).

The Court agrees that Plaintiff has failed to establish a prima facie case of retaliation. Further,

Plaintiff has failed to offer anything to rebut the Sheriff's proffered legitimate explanation for her

termination.  Consequently, Defendant is also entitled to summary judgment on Plaintiff's claims in Count II and Count IV for retaliation under the FCRA and Section 704(a) of Title VII.

### C.  Count III—Plaintiff's Claim for Disparate Treatment Under Section 703 of Title VII

In Count III, Plaintiff purports to bring a claim of disparate treatment on the basis of disability under "Section 703 of the Civil Rights Act."  (Doc. 1).  As such, Plaintiff apparently cites the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), which is Section 703 of Title VII, as distinguished from Plaintiff's retaliation claim under Section 704 of Title VII.  Like her claim under Section 704, her claim under Section 703 fails.  Because disability is not a protected class under Section 703 of Title VII, Plaintiff's disability claim in Count III cannot proceed.  *See Brandon v. Lockheed Martin Aeronautical Systems*, 393 F. Supp. 2d 1341, 1354 (N.D. Ga. 2005).  Notably, in her response, Plaintiff does not dispute that Defendant is entitled to summary judgment on Count III.  Accordingly, Defendant is entitled to judgment as a matter of law on Count III.

### D.  Plaintiff's Motion for Summary Judgment

Finally, the Court turns to Plaintiff's motion for summary judgment, which is based on an argument also advanced in her responses to Defendant's motion for summary judgment.  Plaintiff contends that the policy under which she was terminated, Sheriff's Office Directive 3035.65, violates the ADA in that it creates a bright-line rule of failing to accommodate qualified individuals.  Plaintiff argues that the Defendant's across-the-board policy of terminating any employee who is unable to return to their position in a full capacity after one year runs afoul of the ADA's requirement that an employer provide reasonable accommodations.

In support of her argument, Plaintiff cites a handful of cases from other jurisdictions discussing whether a "100% healed policy" is impermissible because it prevents individualized assessment and necessarily operates to exclude disabled people that are qualified to work.  For

example, Plaintiff cites *Steffan v. Donahoe,* 680 F.3d 738, 748 (7th Cir. 2012) and *Street v. Ingalls Mem'l Hosp.,* 2008 WL 162761 at *7-8 (N.D. Ill. Jan. 17, 2008) (discussing 100% healed policy in connection with the ADA). Plaintiff contends that Defendant's policy therefore violates the ADA because it requires individuals with disabilities, such as Plaintiff, to be 100% healed within 12 months or face termination.

Plaintiff's argument fails for numerous reasons. As a preliminary matter, the Court notes that Plaintiff's Amended Complaint fails to allege a claim under the ADA (Doc. 6), or otherwise put Defendant on notice regarding the claim. The Court also notes that Plaintiff moved to file a second amended complaint, but that request was denied. (Doc. 45). Plaintiff may not belatedly raise an ADA claim for the first time in a summary judgment pleading. *See Newman v. Ormond*, 396 Fed. Appx. 636, 638 (11th Cir. 2010) (affirming district court's decision to deny without discussion newly-raised claims in plaintiff's motion for summary judgment). Although the Supreme Court has mandated liberal pleading standards for civil complaints, the standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004)

Further, as explained in detail above, any claim brought by Plaintiff under the ADA would necessarily fail because she cannot state a prima facie claim. Specifically, Plaintiff cannot demonstrate that she is a qualified individual under the ADA. The undisputed evidence is that Plaintiff was unable to perform the essential job functions of a Corrections Officer, and therefore was not a qualified individual as to that position under the ADA.

Finally, the Court finds Plaintiff's argument unpersuasive in the factual context presented by this case. Although Plaintiff attempts to describe Directive 3035.65 as a "100% healed policy," that characterization is misplaced. The undisputed testimony of Sheriff's Office witnesses,

including the organization's official representative, is that the policy includes individual determinations, and exceptions could be made under the policy depending on individual circumstances. (Doc. 27-14, Ex. N, p. 29). For example, David Palmer testified that he would recommend that the Sheriff consider how close an individual is to being able to return to full duty, and that exceptions could be made depending on circumstances. (Doc. 27-14, Ex. N., p. 29). Palmer's undisputed testimony is that the Sheriff conducts an individualized assessment of each employee's impairment and situation. Further, Plaintiff's own work history demonstrates that she indeed received an individual assessment. As the Sheriff applied the directive to Plaintiff, she was permitted to remain on light duty in the capacity of a Corrections Assistant (while receiving full pay for a Corrections Officer) for well past a year.

Accordingly, Plaintiff's argument under the ADA fails both because Plaintiff was not a qualified individual and because undisputed evidence demonstrates that Directive 3035.65 allows for an individualized assessment. *See Garrett v. University of Alabama at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1311 (11th Cir. 2007) (claims of disability must be considered on a case-by-case basis).

## IV.    RECOMMENDATION

For the reasons discussed above, I respectfully recommend that Defendant's Motion for Summary Judgment (Doc. 27) be GRANTED, and judgment as a matter of law entered in favor of Defendant on all counts. Further, I recommend that Plaintiff's motion for summary judgment (Doc. 28) be DENIED.

Recommended in Ocala, Florida on February 10, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy