UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**BARBARA REDISH,**

        **Plaintiff,**

**v.**     Case No:  5:14-cv-260-Oc-22PRL

**CHRIS BLAIR,**

        **Defendants.**

**ORDER**

This cause comes before the Court on Plaintiff's, Barbara Redish ("Plaintiff"), Objection (Doc. No. 55) to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 54). The R&R pertains to both Defendant's, Marion County Sheriff Chris Blair ("Defendant"), Motion for Summary Judgment (Doc. No. 27) and Plaintiff's Motion for Partial Summary Judgment (Doc. No. 28).  For the following reasons, this Court adopts and confirms the R&R.

**I.   BACKGROUND**

Plaintiff worked as a Master Corrections Officer ("CO") in the Marion County Sheriff's Office ("Sheriff's Office") from 1997 until 2009. (Doc. No. 54. p. 2).  She had a history of work and non-work related injuries resulting in her rotating on and off of light duty. (*Id.*).  Plaintiff has osteoarthritis, fibromyalgia and lumbar spondylosis, all of which are permanent conditions. (Doc. No. 6 ¶ 2).  On September 30, 2008, she was treated for shoulder pain by a personal physician and was authorized to work on restricted duty. (Doc. No. 27-1 p. 19, 72:8-12 and p. 20, 74:4-8).  From 2008 to 2009, she was placed in a light duty role in the Master Control Post as a Corrections Assistant ("CA"). (Doc. No. 54 p. 2).  Though working as a CA, her pay was still that of a CO. (*Id.*).  On June 4, 2009, she filed a discrimination claim with the Equal Employment Opportunity

Commission ("EEOC") alleging, amongst other things, that one of her superiors asked whether the medication for her condition was a narcotic in front of co-workers and sent her home early. (*Id*. at 3). On June 24, 2009, Plaintiff sustained an on the job injury. (Doc. No. 27-1 p. 50). On September 30, 2009, Plaintiff met with the Human Resources Department at the Sheriff's Office. (*Id*.). The meeting resulted in her termination after discussion about the need for a CO and Plaintiff's inability to fulfill the duties of the position. (*Id*.).

Plaintiff presents four claims. These are alleged violations of 1) the Florida Civil Rights Act ("FCRA") for handicap discrimination (Count I); 2) FCRA for retaliation (Count II); 3) Section 703 of the Civil Rights Act for disability discrimination (Count III); and 4) Section 704(a) of the Civil Rights Act for retaliation (Count IV). (Doc. No. 6 ¶¶ 15-29).

On September 15, 2015, both parties moved for summary judgment. Defendant contends that Plaintiff cannot show that she suffered from a handicap or disability and that the Sheriff's Office otherwise applied Marion County Sheriff's Office Operations Directive 3035.65(B)(1)(b) and (c) ("Operations Directive"), its policy for terminating employees that demonstrate they cannot perform the duties of a given position for a full year. (Doc. No. 27 p. 2). Defendant also argues that Plaintiff was not retaliated against for engaging in protected activity because her termination did not occur within a temporally close time period of her filing the EEOC charge. (Doc. No. 27 p. 23). On the other hand, Plaintiff asserts that the Operations Directive is facially discriminatory because it does not allow for an individualized assessment.[1] (Doc. No. 28 p. 1).

The Magistrate Judge recommended that Defendant's Motion be granted and that

---

[1] Plaintiff did not raise a claim for discrimination regarding the Operations Directive in her Amended Complaint. (Doc. No. 6). As the R&R notes, it is impermissible to bring new claims on summary judgment. *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1314 (11th Cir. 2004). The proper procedure is for a plaintiff to file an amended complaint including the new claim. Fed. R. Civ. P. 15(a). Plaintiff moved for leave to do so but was denied. (Doc. No. 45). Consequently, this issue need not to be discussed.

Plaintiff's Motion be denied. (Doc. No. 54 p. 15). This recommendation is based on Plaintiff not being able to establish a prima facie case for discrimination because she was not qualified due to her inability to perform the essential functions of a CO. (*Id*. at p. 7). Because she could not establish that she was qualified, the Magistrate Judge did not endeavor into whether Plaintiff was disabled. (*Id*. at p. 9 n.2). The Magistrate Judge further found that Plaintiff was not retaliated against for filing the EEOC charge because four months passed between the claim and her termination, dissipating a causal connection between the two events. (*Id*. at p. 11). The R&R also provides that disability is not a protected class under Section 703 of the Civil Rights Act. (*Id*. at p. 13).

## II. LEGAL STANDARD

District judges review *de novo* any part of a magistrate judge's recommended disposition of a dispositive motion once a proper objection is made. Fed. R. Civ. P. 72(b)(3). Objections must be made within fourteen days after a magistrate judge issues a recommendation. 28 U.S.C. § 636(b)(1)(C). *De novo* review, however, does not shield the magistrate judge's findings from the "clearly erroneous doctrine" but it also does not require a second evidentiary hearing. Fed. R. Civ. P. 72 advisory committee's note to 1983 addition; *see United States v. Raddatz*, 447 U.S. 667 (1980). Therefore, district judges "may accept, reject, or modify, the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

## III. DISCUSSION

Plaintiff timely filed an objection to the Magistrate Judge's recommended disposition. The Objection contains an array of arguments that mainly dispute the classification of the CA position, her qualifications to fulfill the essential functions of a CO, the sufficiency of her

requests for accommodation and the plausibility of her being accommodated, and the standard applied to determining if Defendant offered a legitimate reason for her termination in the context of her retaliation claim. (*See* Doc. No. 55).

At this stage of the proceedings, "the plain language of [Federal Rules of Civil Procedure] Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Accordingly, Plaintiff objects to the Magistrate Judge's findings on her not being qualified to work as a CO and the lack of a causal link between her EEOC charge and her termination. Because each are essential elements to her claims, the following analysis pertains to these two portions of the R&R. 28 U.S.C. § 636(b).

Granting a motion for summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmoving party fails to prove an essential element of its case, all other facts are rendered immaterial. *Celotex*, 477 U.S. at 322.

### A. *Plaintiff's qualifications to fulfill the essential functions of a CO*

The Sheriff's Office outlines the essential functions of a CO, and Plaintiff could not perform them. Handicap discrimination claims under FCRA are analyzed under the same framework as disability discrimination claims under the federal Americans with Disabilities Act ("ADA"). *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007); *Reynolds v. Int'l Bus. Machines Corp.*, 320 F. Supp. 2d 1290, 1305 n.33 (2004); *Byrd v. BT Foods, Inc.*, 948

So. 2d 921, 925 (Fla. 4th DCA 2007).  FCRA provides that it is unlawful for an employer to "discharge or fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla. Stat. § 760.10.

Proceeding with the same analysis as an ADA claim, it must first be determined whether Plaintiff has offered direct or circumstantial evidence of discrimination.  Direct evidence of discrimination shows discriminatory intent without the need for presumptions or inferences.  *See Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001).  Here, Plaintiff argues that she was terminated because of her condition.  Plaintiff has offered evidence regarding the facts surrounding her EEOC charge and argued against the validity of the Operations Directive. Neither show discriminatory intent without having to draw further inferences because Defendant cites the Operations Directive as the reason for her termination, and a significant amount of time elapsed between the EEOC charge filing and her termination.  Therefore, the evidence currently before the Court is circumstantial.

The burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to discrimination cases based on circumstantial evidence.  *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001).  The burden is initially on the plaintiff to establish a prima facie case of discrimination, then it shifts to the defendant to show a non-discriminatory justification, and finally it returns to the plaintiff to prove that the defendant's non-discriminatory justification was just pretext to discriminatory intent.  *McDonnell Douglas*, 411 U.S. at 802-04.

Plaintiff has not satisfied her burden of establishing prima facie discrimination. A prima facie case of discrimination under the ADA requires Plaintiff to demonstrate that 1) she has a disability; 2) she is a qualified individual; and 3) Defendant unlawfully discriminated against her because of her disability. *Holly*, 492 F.3d at 1255-56. As the R&R suggests, regardless if Plaintiff had a handicap, or was disabled as defined under the ADA, she was not otherwise qualified for the position.

The ADA's regulations explicitly define what it means to be qualified. Specifically, "the term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." *Id*. at § 1630.2(n)(1). The ADA's regulations offer an extensive list of indicators for essential functions. The most relevant here are the employer's "judgement as to which functions are essential" and the "written job descriptions prepared for advertising or interviewing applicants for the job." *Id*. at §§ 1630.2(n)(3)(i) and (ii).

Plaintiff's condition restricted her to a light duty role that specifically required functions that were different than those that her employer deemed essential to be a CO.[2] The Sheriff's Office advertises the role of a CO to include being responsible for "the custody, control and care of . . . and the movement of inmates." (Doc. No. 27-3 p. 1). It further lists a variety of other duties requiring significant physical activity. For example, taking action in emergencies, preventing escapes, and searching visitors, living quarters, and inmates for contraband. (*Id*.).

---

[2]   A CA's role is administrative. (Doc. No. 54 p. 2). Unlike a CO, a CA is not responsible for handling inmates. (*See id*.).

From September 2008 to September 2009, Plaintiff had been working in light duty and had been cleared to return to full duty for roughly one to two weeks throughout this time period. (Doc. No. 27-1 p. 20, 74:17-20). Plaintiff stated in her deposition that during the time she was cleared, she could not perform the full duties of a CO and went back to light duty. (*Id*. at 75:3-10). Plaintiff nonetheless argues in her Objection that she was allowed to return to full duty. (Doc. No. 55 p. 4). However, this was for her June 24, 2009 on the job injury sustained while she was working as a CA (Doc. No. 27-1 p. 50), not the September 30, 2008 injury diagnosed by her personal physician (*id*. at p. 20, 74:6-8) that originally called for light duty. The record does not reflect that she was cleared to return to full duty on the September 30, 2008 injury. Plaintiff therefore could not perform the essential functions of a CO that are required to be a "qualified individual." 29 C.F.R. § 1630.2(m).

Furthermore, there was no reasonable accommodation for Plaintiff to perform the duties of a CO because the position's essential functions involve physical activity in which Plaintiff could not engage. This is demonstrated by her year-long stint on light duty and, as she stated, her inability to handle a CO's duties upon briefly being cleared for full duty. (Doc. No. 27-1 p. 20, 75:3-10). Prolonged, indefinite light duty as a CA would not be a reasonable accommodation. *See Rio v. Runyon*, 972 F. Supp. 1446, 1458 (S.D. Fla. 1997). Because Plaintiff failed to establish that she is qualified—an essential element of prima facie discrimination—all other facts are immaterial and do not warrant discussion. *Celotex*, 477 U.S. at 322.

B. *The causal connection between Plaintiff's EEOC charge and termination*

Plaintiff also fails to establish prima facie retaliation. Similar to FCRA discrimination claims, FCRA retaliation claims also track federal precedent under Section 704(a) of the Civil

Rights Act, 42 U.S.C. § 2000e-3. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) (noting that Title VII analysis guides FCRA claims). Accordingly, the subsequent analysis under Section 704(a) of the Civil Rights Act is sufficient for Plaintiff's federal and state retaliation claims. The *McDonnell Douglas* burden-shifting framework used in discrimination cases is also applicable in the retaliation context. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (applying *McDonnell Douglas* to a failure to promote claim).

In her Objection, Plaintiff argues that the Magistrate Judge applied the wrong standard in determining whether Defendant's justification for the action was pretext. However, this argument is misplaced because Plaintiff failed to show prima facie retaliation and thus the burden did not shift through the *McDonnell Douglas* framework to warrant analysis of pretext. A prima facie case of retaliation requires that Plaintiff "1) engaged in an activity protected under Title VII; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013). The language in Section 704(a) explicitly protects filing EEOC charges for discrimination.[3] Furthermore, "[a]n action is materially adverse if it might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1259 (11th Cir. 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). A reasonable worker would likely be dissuaded from filing an EEOC charge if the end result is termination.

---

[3]   The statute states, in relevant part, that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

However, a causal connection between Plaintiff's termination and her EEOC charge is lacking. Demonstrating a causal connection between the adverse action and the protected activity requires a plaintiff to "establish that the protected activity and the retaliatory action were not wholly unrelated." *Robinson v. Intercorp*, 512 F. Supp. 2d 1307, 1314 (N.D. Ga. 2007) (citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993)). Additionally, "close temporal proximity may be sufficient to show that the protected activity and retaliatory actions were not wholly unrelated." *Robinson*, 512 F. Supp. 2d at 1314 (internal quotations omitted). Almost four months passed in between the date that Plaintiff filed her EEOC charge and the date that she was terminated. As a result, the amount of time passed attenuates the two events and does not support finding a causal connection. *See* Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001).

## IV.   CONCLUSION

Therefore, based on the foregoing, it is **ORDERED** as follows:

1. Plaintiff's Objection (Doc. No. 55) filed on February 19, 2016 is **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation (Doc. No. 54), issued on February 10, 2016, is **ADOPTED and CONFIRMED** and made a part of this Order.

3. Defendant's Motion for Summary Judgment (Doc. No. 27), filed September 15, 2015, is **GRANTED**.

4. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 28), filed September 15, 2015, is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on March 9, 2016.

_____
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
Magistrate Judge Lammens